UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

WILLIAM J. EINHORN, Administrator : Hon. Joseph H. Rodriguez
of the Teamsters Pension Trust Fund of
Philadelphia and Vicinity, : Civil Action No. 12-6891

       Plaintiff, :

  v. :

                                        MEMORANDUM OPINION
PENN JERSEY BUILDING MATERIALS, INC., :         & ORDER
AGATE CONSTRUCTION CO., INC.,
TUCKAHOE SAND & GRAVEL CO., INC., and :
EASTERN TRANSIT MIX,
 :
       Defendants.
 :

---

PENN JERSEY BUILDING MATERIALS, INC., :

       Third-Party Plaintiff, :

  v. :

TEAMSTERS UNION LOCAL NO. 676, :
HOWARD W. WELLS, JIM BENNETT, ERNEST
CLEMENTS, ED PEARCE, ROY KAISER, TOM :
LYON, PASQUALE BELLO, and JOHN DOES 1-10,
 :
       Third-Party Defendants.

---

This matter is before the Court on Motion [36] of the Third-Party Defendant Teamsters Local Union No. 676 to Dismiss Counts One and Two of the Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(c). The Court has considered the submissions of the parties and decides the motion pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the motion will be denied.

Background

Third-Party Plaintiff Penn Jersey Building Materials, Inc. was a party to a Collective Bargaining Agreement with Third-Party Defendant Teamsters whereby Penn Jersey participated in and contributed to the Teamsters Pension Trust Fund of Philadelphia and Vicinity on behalf of its employees. In November of 2005, the parties engaged in negotiations for the CBA effective April 1, 2005 through April 30, 2008. In negotiating pension contributions, Penn Jersey expressed concern that there was unfunded liability with regard to the Fund. Teamsters represented that there was no unfunded liability with regard to the Pension Fund, and that "should the employer withdraw from the Agreement in the future there will be no withdraw liability." (CBA, p. 16.)

In 2009, Penn Jersey withdrew from the Pension Fund. On or about November 6, 2012, the Pension Fund filed suit alleging that Penn Jersey, as well as Agate Construction Tuckahoe Sand & Gravel Co., Inc. and Eastern Transit Mix, was responsible for liability resulting from its withdrawal from the Pension Fund in 2009. The Pension Fund alleges that it incurred $961,281.59 in liability based on Penn Jersey's 2009 withdrawal.

Count One of the Third-Party Complaint states, "[s]hould the Pension Fund be able to establish that Penn Jersey's withdrawal from the Pension Fund resulted in withdrawal liability, such a finding would constitute a breach of the CBA by the Union and would be in violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Counts Two demands indemnification from the Union from any liability arising out of its withdrawal from the Pension Fund.

Standard on Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings.  The movant under Rule 12(c) must show clearly that no material issue of fact exists and that it is entitled to judgment as a matter of law.  Rosenau v. Uniford Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 29091 (3d Cir. 1988)).  A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6).  Turbe v. Government of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).  Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Fed. R. Civ. P. 8(a)(2).  While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.  Phillips, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Discussion

Teamsters first argues that the CBA relied upon by Penn Jersey expired by its terms on April 30, 2008, so Penn Jersey's claims arising out of any alleged breach of that CBA must be dismissed as this Court is without jurisdiction to decide them. However, "the existence of a union contract is not a jurisdictional requirement under section 301." Pittsburgh Mack Sales & Svc., Inc. v. International Union of Operating Engineers, Local Union No. 66, 580 F.3d 185, 190 (3d Cir. 2009) (finding "[r]egardless of whether or not the CBAs were terminated, . . . the District Court had jurisdiction under section 301").

Next, the Union argues that pursuant to the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, ("MPPAA"), because the principal purpose of Section 7 of the 2005 CBA[1] was for Penn Jersey to "evade or avoid" withdrawal liability to the Pension Fund, it is unlawful and cannot form the basis for a breach of contract action against the Union. The MPPAA, an amendment to ERISA, created the concept of withdrawal liability "to prevent employers from withdrawing from a multiemployer pension plan without paying their share of unfunded, vested benefit liability, thereby threatening the solvency of such plans." SUPERVALU, Inc. v. Board of Trustees of SW Pa. and W. Md. Area Teamsters & Employers Pension Fund, 500 F.3d 334, 336 (3d Cir. 2007) (citations omitted). "[T]he MPPAA requires that a withdrawing

---

[1]That provision states:

This Agreement is being executed based upon the understanding that there is no unfounded [sic] pension liability with regard to the "Red Circle" Pension Fund. Therefore, should the Employer withdraw from the Agreement in the future there will be no withdraw liability.

Third-Party Complaint, ¶ 16; Compl. Ex. A at 16 (Section 7).

employer pay its share of the plan's unfunded liability . . . [to] insure[] that the financial burden will not be shifted to the remaining employers." Id. at 337. "It is the duty of the pension plan to determine whether withdrawal liability has occurred and in what amount.  29 U.S.C. §§ 1382, 1391." Id. "The 'obligation to contribute' arises '(1) under one or more collective bargaining (or related) agreements, or (2) as a result of a duty under applicable labor-management relations law.' 29 U.S.C. § 1392(a)." Id.

"The purposes behind ERISA and the MPPAA—ensuring that pension funds will be adequately funded, even when employers withdraw from them, and that the employees who are relying on those funds will be protected—will be served even if indemnification agreements between employers and third parties are permitted, so long as the employer remains primarily liable for the funding." Pittsburgh Mack, 580 F.3d at 194.  Here, as with the Plaintiff in Pittsburgh Mack, Penn Jersey is not attempting to eliminate withdrawal liability under the MPPAA "and therefore does not come within the ambit of the rule overriding private contracts in this arena." Pittsburgh Mack, 580 F.3d at 195.

The Union also argues that the CBA does not obligate it to indemnify Penn Jersey for obligations to the Pension Fund; to the extent that Section 7 of the CBA can be construed as an indemnification agreement, it is ambiguous.  Penn Jersey points out that the Union's proposed interpretation of Section 7 would render the provision meaningless.  Insofar as the Union argues that the language of the provision at issue is ambiguous, the Court must "consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." Einhorn v. Fleming Foods of Pa., Inc., 258 F.3d 192, 194 (3d Cir. 2001).  As such, the Court

cannot make such a determination at this early pleading stage.  See <u>Ford Motor Co. V. Edgewood Properties, Inc.</u>, No. 06-1278, 06-4266, 2007 WL 4526594, at *13 (D.N.J. Dec. 18, 2007).

Finally, the Union argues that to the extent the 2005 CBA is still viable, Penn Jersey must submit it claims of breach to final and binding proceedings before the Joint Area Committee.  The CBA provided:

> During the term of this Agreement the Union agrees that it will not authorize aid or encourage any slowdown, strike or stoppage of work in violation of this Agreement.  The Employer may take disciplinary action, including discharge, against those employees who take part therein.  Grievances shall be taken up between the Company involved and the Union in accordance with the following procedure.  A grievance is defined as any controversy between a Company and the Union concerning compliance with any of the provisions of this Agreement.
>
> *          *          *
>
> If the business agent of the Union and the Employer or the Employer's representative cannot reach a satisfactory Agreement on such grievance or dispute . . . such grievance or dispute shall be submitted to the Joint Area Committee for a determination.

Compl., Ex. A, Section 6.1, 6.4.  The plain language of the CBA indicates that this grievance clause related to employee grievances and is not applicable to this matter.

## Conclusion

Accordingly,

IT IS ORDERED this 31st day of March, 2014 that the Motion of the Third-Party Defendants to Dismiss Counts One and Two of the Third-Party Complaint [36] is hereby <u>DENIED</u>.

/s/ Joseph H. Rodriguez  
JOSEPH H. RODRIGUEZ  
U.S.D.J.

6