UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------------

| | | |
|---|---|---|
| WILLIAM J. EINHORN, Administrator of the Teamsters Pension Trust Fund of Philadelphia and Vicinity, | : | Hon. Joseph H. Rodriguez |
| | : | Civil Action No. 12-6891 |
| Plaintiff, | : | |
| v. | : | |
| PENN JERSEY BUILDING MATERIALS, INC., AGATE CONSTRUCTION CO., INC., TUCKAHOE SAND & GRAVEL CO., INC., and EASTERN TRANSIT MIX, | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------

| | | |
|---|---|---|
| PENN JERSEY BUILDING MATERIALS, INC., | : | |
| Third-Party Plaintiff, | : | |
| v. | : | |
| TEAMSTERS UNION LOCAL NO. 676, HOWARD W. WELLS, JIM BENNETT, ERNEST CLEMENTS, ED PEARCE, ROY KAISER, TOM LYON, PASQUALE BELLO, and JOHN DOES 1-10, | : | **OPINION** |
| | : | |
| Third-Party Defendants. | : | |

------------------------------------------------------------

This is an action arising under Sections 502(a)(3), (e)(1) and (f), and 4301(c), 29 U.S.C. §§1132(a)(3), (e)(1) and (f), and 1451(c) of the Employee Retirement Income Security Act of 1974 ("ERISA").  Presently before the Court are several motions seeking summary judgment.  Plaintiff William J. Einhorn ("Einhorn") commenced this action to,

1

*inter alia*, collect withdrawal liability in the amount of $961,281.59, as determined under Section 4201 of ERISA, 29 U.S.C. §1381.

## I.    <u>Background</u>

The Amended Complaint seeks liability against Defendants Penn Jersey Building Materials, Inc., Agate Construction Co., Inc., Tuckahoe Sand and Gravel Co., Inc., Eastern Transit Mix, Johnston Enterprises, Inc., Dial Block, Inc., Johnston Realty, ELJ Realty, (collectively the "company Defendants") and James E. Johnston, Jr.  Plaintiff Einhorn is the Administrator of the Teamsters Pension Trust Fund of Philadelphia and Vicinity (the "Plan") and a fiduciary of the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).  The Plan is a multiemployer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§1002(37) and 1301(a)(3), and an "employee pension benefit plan" within the meaning of Sections 3(2)(A) and (3) of ERISA, 29 U.S.C. §§1002(2)(A) and (3), established and maintained for the purpose of providing retirement and related benefits to eligible participants and beneficiaries, and subject to the withdrawal liability provisions of ERISA.

With the exception of James E. Johnston, Jr. ("Johnston"), there is no dispute that the company Defendants are employers within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5).  In all, there are eight companies that are part of a control group owned by Johnston.  It is alleged that the Defendants incurred withdrawal liability when Agate Construction withdrew from or ceased to make contributions to the fund in 2009.  The Amended Complaint alleges that because Defendants are members

2

of a "control group," they are jointly and severally liable for the assessed withdrawal liability under ERISA Section 4001(b) and 4201(a), 29 U.S.C. §§1301(b) and 1381(a).

Defendant/Third Party Plaintiff Penn Jersey initiated a Third Party action against Teamsters Union Local 676 (the "Union" or "Local 676"). The Union and Penn Jersey have a long relationship and have been parties to a collective bargaining agreement since June, 1999. In or about November 2005, the Union and Penn Jersey engaged in negotiations for a new collective bargaining agreement to be effective for the period of April 1, 2005 through April 30, 2008 (the relevant "CBA"). See Third Party Comp., ¶ 13. The Union was the "sole collective bargaining agent" for bargaining unit employees of Penn Jersey. Id. at ¶ 14. In negotiating pension contributions, which required Penn Jersey to continue to make contributions to the Plan, Penn Jersey claims it expressed concern to the Union that there was unfunded liability with regard to the Plan. Id. at ¶ 15. In particular, Penn Jersey was concerned that by agreeing to the pension contribution provisions proposed by the Union, Penn Jersey would subject itself to liability should Penn Jersey, or a member of the control group, withdraw from the Plan in the future. Id. at ¶ 16. According to the Third Party Complaint, in an effort to alleviate the Penn Jersey's concerns, and to induce Penn Jersey into agreeing to the terms of the CBA, the Union represented that there was no unfunded liability with regard to the Plan and that "should the Employer withdraw from the Agreement in the future there will be no withdraw liability." (Exhibit A, CBA, pg. 16). Based upon these representations by the Union, Penn Jersey signed the CBA in November 2005. Id. at ¶ 9.

It is undisputed that Penn Jersey withdrew from the Plan Fund in 2009. The parties agree that the CBA expired on April 30, 2008.  Pursuant to the terms of Section 7 of the CBA, Penn Jersey argues that there should not have been any "withdraw liability" based on Penn Jersey's withdrawal from the Plan because Section 7 provides for future withdrawal liability coverage that survives the expiration date.  However, on or about November 6, 2012, the Plan filed the instant action alleging that Penn Jersey and others are responsible for liability resulting from its withdrawal from the Plan in 2009 and seeks $961,281.59, plus interest and liquidated damages.  In the third party action, Penn Jersey denies any responsibility for the alleged withdrawal liability, and in the event that it is established that the Plan is owed monies, seeks to establish contractual liability against the Union on grounds that the Union breached the terms of the CBA.

Multiple parties move for summary judgment on various grounds.  First, Einhorn moves for summary judgment against the company Defendants and Defendant Johnston, individually.  Defendant Penn Jersey moves for summary judgment against the Third Party Defendant Local 676.  Defendants Agate Construction Co., Inc., Dial Block, Inc., Eastern Transit Mix, ELJ Realty, Johnston Enterprises, Inc., Johnston Realty, James E. Johnston, Jr., Penn Jersey Building Materials, Inc., and Tuckahoe Sand & Gravel Co., Inc. move for Partial Summary Judgment against Einhorn as to the claims plead in Count IX against Johnston.  Finally, Third Party Defendant Local 676 moves for summary judgment against the Third Party Plaintiff Penn Jersey on the ground that any obligation for withdrawal liability expired with the CBA on April 30, 2008.

## II.   <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a showing must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, will fail to preclude the entry of summary judgment. <u>Id.</u>

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, and must provide that party the benefit of all reasonable inferences. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007); <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 287 (3d Cir. 2014). Any such inferences "must flow directly from admissible evidence[,]" because "'an inference based upon [ ] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" <u>Halsey</u>, 750 F.3d at 287 (quoting <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (citing <u>Anderson</u>, 477 U.S. at 255)).

Accordingly, the moving party initially has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323

(1986). Once the moving party has met this burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Again, to withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).

Indeed,

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. The movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

249 (1986).  Credibility determinations are the province of the factfinder. <u>Big Apple</u> <u>BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   <u>Discussion</u>

The four motions for summary judgment have several overlapping issues. Although Einhorn moves for summary judgment against all Defendants, both Einhorn and Defendant Johnston argue for summary judgment as to Count IX in the Amended Complaint.  Likewise, the competing motions for summary judgment of Penn Jersey and Local 676, as to the Third Party Complaint, require a determination on the viability of the CBA.  As a result, the motions will be addressed simultaneously.

**A.   <u>Motion for Summary Judgment by William J. Einhorn [89] and Motion for Partial Summary Judgment by Defendants Penn Jersey Building Materials, Inc., Agate Construction Co., Inc., Tuckahoe Sand and Gravel Co., Inc., Eastern Transit Mix, Johnston Enterprises, Inc., Dial Block, Inc., Johnston Realty, ELJ Realty, and James E. Johnston, Jr.[91]</u>**

Einhorn moves for summary judgment against each Defendant.  Counts I-VIII of the Amended Complaint are plead against Defendants Penn Jersey Building Materials, Inc., Agate Construction Co., Inc., Tuckahoe Sand and Gravel Co., Inc., Eastern Transit Mix, Johnston Enterprises, Inc., Dial Block, Inc., Johnston Realty, and ELJ Realty, respectively.  Count IX is plead against James E. Johnston, Jr., individually and Einhorn also moves for summary judgment as to this count.  In a separate motion, Defendant Johnston seeks partial summary judgment against Einhorn, as to Count IX.

a.  <u>Counts I-VIII, as plead against Defendants Penn Jersey Building Materials, Inc., Agate Construction Co., Inc., Tuckahoe Sand and Gravel Co., Inc., Eastern Transit Mix, Johnston Enterprises, Inc., Dial Block, Inc., Johnston Realty, and ELJ Realty</u>

Summary Judgment is granted in favor of Einhorn as to Counts I-VIII of the Amended Complaint.  Counts I-VIII seek liability against the eight defendant companies that are part of the control group owned by Johnston for withdrawal liability.  During oral argument, Defendants conceded that summary judgment is warranted as to these claims because there is no dispute that the company Defendants are members of a control group and are therefore jointly and severally liable for the assessed withdrawal liability under ERISA Sections 4001(b) and 4201(a), 29 U.S.C. §§1301(b) and 1381(a). In addition, the company Defendants do not dispute the amount of liability as $961,281.59. Defendants only seek indemnification from the Union, and that third party claim will be addressed <u>infra.</u>

 b. <u>Count IX, as plead against James E. Johnston, Jr.</u>

Summary judgment is denied as to Count IX.  Count IX seeks liability against Johnston individually on the theory that Mr. Johnston is liable to the fund by virtue of his partnership interest in ELJ Realty and because he has personally engaged in activities which constitute a "trade or business" in "common control" with the withdrawing Defendants.  Elaine Johnston, Mr. Johnston's wife, owns Penn Jersey, and there is evidence in the record to suggest that Mr. Johnston is a co-owner.  Einhorn contends that this relationship renders a benefit to Mr. Johnston because his negotiations have the effect of enriching Mrs. Johnston, and by virtue of their marriage and shared income, himself. Einhorn also argues that a direct benefit is evidenced by virtue of Mr. Johnston's ownership interest in ELJ Realty.  The parties dispute whether

Mr. Johnston is an owner of ELJ Realty and if not, whether his alleged marital benefit is a direct benefit sufficient to satisfy the exception for individual liability.

Johnston is being sued as an individual and Count IX seeks to establish liability for his role as an alleged owner in certain corporations and on an individual basis, apart from his responsibilities as a controlling shareholder or based upon ownership. The question of whether Mr. Johnston can be held liable as an individual turns on whether he engaged in economic activities deemed to constitute a "trade or business" as defined by ERISA. See Central States, SE and SW Areas Pension Fund v. Fulkerson, 238 F.3d 891, 895 (7th Cir. 2001); 29 U.S.C. §1301(b)(1).

An individual deemed a "trade or business" can be subject to withdrawal liability if the individual acting as a "trade or business" is under common control with the withdrawing employer. Id. ERISA imputes withdrawal liability upon an "employer" when there is a full or partial withdrawal from a multi-employer pension plan. 29 U.S.C. § 1381(a). The reach of the withdrawal liability extends to all "trades or businesses (whether or not incorporated) which are under common control" with the withdrawing employer. 29 U.S.C. § 1301(b)(1).1 As a result, if Johnston is found to be "trade or business" and under "common control" with the withdrawing employer, he is jointly and severally liable for withdrawal liability. Id. In other words, Johnston must have engaged in an unincorporated trade or business separate from his activities as owner of

---

1 The common control provisions under § 1301(b) explicitly do not apply to individuals, but only to "trades or businesses." 29 U.S.C. § 1301(b); Brown v. Astro Holdings, Inc., 385 F.Supp.2d 519, 533 (E.D.Pa. 2005).

the defendant corporation(s).  See Central States, Southeast and Southwest Areas
Pension Fund v. White, 258 F.3d 637, 640 (7th Cir. 2001).

There are disputed questions of fact that preclude summary judgment at this
stage.  Specifically, whether and to what extent Johnston may have participated as a
"trade or business" for the benefit of the control group.  Johnston claims that the
undisputed evidence in the record establishes he did not engage in any activities on
behalf of an unincorporated trade or business. See Reinfeld Cert. ¶3, Exh. B, Johnston,
Jr. Dep. at 24:12-16.  There is evidence in the record that demonstrates that Mr.
Johnston is the owner of Defendants Agate Construction, Tuckahoe Sand and Gravel,
Eastern Transit Mix, Dial Block, Inc., and Johnston Realty and that he performed
consulting services for Penn Jersey, which is owned his wife. See id. at 16:4-20:11; 38:9-
20. Johnston testifies that he did not receive any compensation, benefits in the form of
insurance coverage, or other perks for his consulting services on behalf of Penn Jersey.
Id. at 67:16-19; 70:10-13.   He also states that he was not engaged in any unincorporated
trade or company and he denied the same in deposition. See id. at 4:12-16.   Johnston
also denies owning any commercial property or property for which any company that he
or his wife owns, operates out of. Id. at 54:1-4.  Johnston states that neither he nor his
wife has ever received rental income from any the buildings or equipment that are used
by any of the defendant companies. Id. 54:5-55:1. As a result, Johnston claims that all of
his "trade or business" activities were directly tied to companies in which he or his wife
had an ownership interest.  Id. at 16:4-20:11.

However, there is also evidence in the record that suggests that for the documented time period of 2007-2011, Johnston listed ELJ Realty on his tax returns as a partnership from which receives rental/lease income. Pl. Counter Stat. Facts, ¶¶ 12-14. In addition, during his deposition, Johnston gave inconsistent statements regarding the ownership of ELJ realty.  Plaintiff cites to Johnston's deposition testimony on October 17, 2014 where he states that he and his wife each enjoy 50% ownership in the company. Johnston Oct. 17, 2014 Dep., pp. 23:21-34:3.  Then on April 7, 2015, Johnston testified in deposition that his wife owns 100% of ELJ Realty. Johnston April 7, 2015 Dep., pp. 11:18-12:6.

Given the nature of the factual disputes in the record that relate squarely to Johnston's alleged "trade or business" activities, summary judgment is denied at this time.

**B.** Penn Jersey Building Materials, Inc.'s Motion For Summary Judgment Against Third Party Defendant Teamsters [90] and Motion For Summary Judgment By Teamsters Union Local No. 676 [92]

Both Penn Jersey and Local 676 move for summary judgment as to the Third Party Complaint.  The Third Party Complaint pleads four counts against Local 676. Count I alleges a breach of the CBA and states, "[s]hould the Pension Fund be able to establish that Penn Jersey's withdrawal from the Pension Fund resulted in withdrawal liability, such a finding would constitute a breach of the CBA by the Union and would be in violation of § 301 of the Labor Management Relations Act, 29 U.S.C. §185." Count II demands indemnification from the Union for any liability arising out of its withdrawal

from the Plan. Count III alleges fraud and Count IV alleges negligent misrepresentation.

Penn Jersey moves for partial summary judgment as to Counts I and II only. Third Party Defendant Local 676 seeks summary judgment on grounds that it did not breach the CBA.  Local 676 alleges that the CBA expired on April 30, 2008 prior to the withdrawal, therefore, there is no breach.2 <u>See</u> St Mt. Facts, ¶ ¶61, 78. In opposition, Penn Jersey argues that Section 7 of the CBA survives the expiration date and provides lifetime or extended coverage for withdrawal liability.

It is undisputed that in or about November 2005, Local 676 and Penn Jersey engaged in negotiations for a new collective bargaining agreement effective April 1, 2005 through April 30, 2008. St Mt. Facts, ¶61.   However, Penn Jersey claims that during negotiations, it expressed concern to Local 676 that there was unfunded liability with regard to the Plan. Th. Party Compl., ¶ 15.  Penn Jersey's concern related to the potential for withdrawal liability should Penn Jersey withdraw from the Plan in the future. <u>Id.</u> at ¶ 16. Penn Jersey claims that Local 676 assuaged this concern by representing that there was no unfunded liability with regard to the Plan, and added language in Section 7 stating that "should the Employer withdraw from the Agreement in the future there will be no withdraw liability." <u>Id.</u>, Exhibit A, CBA, pg. 16. Local 676 disputes discussing the meaning and/or the intent of the language of Section 7 during the negotiation period.

The parties agreed to adopt the CBA, including the following provision:

_____

2 At oral argument, Local 676 withdrew its alternative argument that summary judgment is warranted because Penn Jersey failed to invoke its arbital remedy under the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381.

<u>Section 7</u>

> This Agreement is being executed based upon the understanding that there is no unfounded (sic) pension liability with regard to the "Red Circle" Pension Fund.  Therefore, should the Employer withdraw from the Agreement in the future there will be no withdraw liability.

St. Mt. Facts, Exhibit F at ¶¶ 16, 78.

Penn Jersey signed the CBA in November, 2005. Th. Party Compl. at ¶ 9. In support of its motion, Penn Jersey argues that it never had any discussions with Local 676 as to the meaning of the language contained in Section 7.  St. Mt. Facts, ¶76.  The CBA expired, by its terms, on April 30, 2008.  <u>Id.</u> at ¶79.  In 2008, Penn Jersey ceased making contributions to the Fund and, in 2009, a member of the Penn Jersey control group, Defendant Agate Construction Co., Inc., also ceased making contributions to the Fund. <u>Id.</u> at ¶¶ 81, 82; Th. Party Compl. at ¶ 17.   There is no dispute as to the withdrawal timeline.

Penn Jersey denies any responsibility for the alleged withdrawal liability and claims that Local 676 breached the terms of the CBA, specifically Section 7.  Penn Jersey argues that the clear and unambiguous language of Section 7 of the CBA relieves it of the obligation to make withdrawal liability payments to the Pension Fund. St. Mt. Facts, ¶86.   In addition, Penn Jersey argues that, as a matter of law, Local 676 breached its duty to indemnify Penn Jersey for the assessment of withdrawal liability and that the breach shifts the responsibility for withdrawal liability payments onto Local 676. <u>Id.</u>  In essence, Penn Jersey seeks coverage in perpetuity, namely coverage that extends beyond the expiration of the CBA, for withdrawal liability.

Local 676 argues that because the CBA expired in April of 2008, by its express terms, Penn Jersey and the other Defendants as members of the control group are responsible for the withdrawal liability.

Penn Jersey presents two alternative theories with respect to Section 7. First, it argues that this Court's March 31, 2014 decision on the Motion for Judgment on the Pleadings is the law of the case rendering Section 7 ambiguous. Th.Party Pl. Brief at p.13. On the other hand, Penn Jersey argues that the language of Section 7 is clear and unambiguous and contemplates future benefits. St. Mt. Facts, ¶86. Both arguments fail in light of the Supreme Court's decision in <u>M & G Polymers USA, LLC v. Tackett</u>, 135 S. Ct. 926, 190 L. Ed. 2d 809 (2015).3 Pursuant to the CBA expiration/ durational clause, Local 676 and Penn Jersey were not in prvity of contract when Penn Jersey and/or Agate withdrew from the Plan. As a result, Local 676 did not breach the terms of the CBA. Summary judgment is granted in favor of Local 676.

In <u>M & G Polymers</u> the Supreme Court reaffirmed that courts must apply ordinary contract law principles to interpret collective-bargaining agreements, to the extent that such application is "not inconsistent with federal labor policy." <u>M & G Polymers</u>, 135 S. Ct. at 929 (citing <u>Textile Workers v. Lincoln Mills of Ala.</u>, 353 U.S. 448, 456–457, 77 S.Ct. 912, 1 L.Ed.2d 972.)) "When a collective-bargaining agreement is unambiguous, its meaning must be ascertained in accordance with its plainly expressed intent." <u>Id.</u> (citing 11 R. Lord, Williston on Contracts § 30:6, p. 108. P. 933). One such

---

3 The law of the case doctrine is inapplicable here, as the March 31, 2014 decision pre-dates the Supreme Court's decision in <u>M & G Polymers</u>, 135 S. Ct. 926. In addition, the present motion presents a different standard of review. <u>See</u> <u>Corliss v. Varner</u>, 247 Fed. Appx. 353, 354 (3d Cir. 2007) (citations omitted).

principle reminds that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." Id. at 930 (quoting Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB, 501 U.S. 190, 207 (1991)) (internal quotation marks omitted).  The parties may, however, explicitly contract to ensure that certain rights are not extinguished by an expiration/ durational clause. Id. (citing Litton, 501 U.S. at 207) (citations omitted)). There is no evidence in the record to support an agreement by the parties to extend the relief allegedly bestowed by Section 7 beyond April 30, 2008.

Application of ordinary contract law principles councils against a finding that Section 7 survives the durational clause for the CBA under either of Penn Jersey's theories.  First, the language of the CBA, contains an expiration clause which Section 7 does not clearly or unambiguously abridge.  See Bd. Of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Caddo Sheet Metal, LLC, No. 1:14-CV-858, 2015 WL 4032037, at *2-3 (E.D. Va. June 30, 2015) (citing M & G Polymers, 135 S.Ct. at 933 (quoting 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012) (Williston)); accord Keffer v. H.K. Porter Co., 872 F.2d 60, 62 (4th Cir.1989) ("[A]s with any contract interpretation, we begin by looking at the language of the agreement for any clear manifestation of the parties' intent.")). "When the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further. But when the contract is ambiguous, a court may consider extrinsic evidence to determine the intentions of the parties." M & G Polymers, 135 S. Ct. at 938 (Ginsburg, J., concurring) (citations to 11 Williston §§ 30:6–7 omitted).  "To determine what the

contracting parties intended, a court must examine the entire agreement in light of relevant industry-specific 'customs, practices, usages, and terminology.'" Id. at 937–38 (Ginsburg, J., concurring) (quoting 11 Williston § 30:4, at 55–58)).

The unambiguous language of Section 7 does not extend withdrawal liability coverage beyond the durational clause of the CBA.  In addition, there is no language to suggest that this clause is an indemnification clause, as the word "indemnification" is absent. In the absence of clear language, Section 7 does not survive the expiration of the CBA. "Employer obligations and employee rights, under a collective bargaining agreement, do not survive the expiration of the agreement absent a clear intention of the parties." Dewhurst v. Century Aluminum Co., 649 F.3d 287, 292 (4th Cir. 2011) (citation and internal quotation marks omitted).

A plain reading of the Section 7 does not clearly or unambiguously extend withdrawal liability beyond the expiration date.  The phrase "should the Employer withdraw from the Agreement *in the future* there will be no withdraw liability" on its own does not save Section 7 from expiration or constitute a "survivability clause[.]" See Caddo Sheet Metal, LLC, No. 1:14-CV-858, 2015 WL 4032037, at *5-6; see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co., 188 F.3d 130, 141 (3d Cir. 1999) (holding that "a plain reading of the phrases, "will continue" and "shall remain," certainly does not unambiguously indicate that the benefits will continue ad infinitum [... and that] [i]t cannot be said that the phrases clearly and expressly indicate vesting since there is simply no durational

language to qualify these phrases [or that] the benefits "will continue for the life of the retiree," or that they "shall remain unalterable for the life of the retiree.").

Moreover, M & G Polymers directs "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." M & G Polymers, 135 S. Ct. at 936-37.  For these reasons, Penn Jersey's argument that the phrase "in the future" is rendered meaningless if not construed to contemplate an extension of Section 7 has been rejected.  Much like the clause construed in Caddo Sheet Metal, the language in Section 7 is not "meaningless" if construed not to survive the CBA's expiration." Caddo Sheet Metal, LLC, No. 1:14-CV-858, 2015 WL 4032037, at *5.  Because the clause "has some significance during the term of the agreement, the Supreme Court [holds] it is by definition not illusory[.]" Id. (citing M & G Polymers, 135 S. Ct. at 936).

A similar conclusion was reached by the Sixth Circuit in Gallo v. Moen, Inc., 813 F.3d 165 (6ᵗʰ Cir. 2016).  Applying the admonitions in M & G Polymers, the Moen Court stated that "[if M & G Polymers] tells us anything, however, it is that the use of the future tense without more—without words committing to retain the benefit for life— does not guarantee lifetime benefits." Moen, 813 F.3d at 272 (citing M & G Polymers, 135 S. Ct. at 937). Like Moen, Section 7 appears to promise withdrawal liability coverage "until some point in the future, but they do not say what that point is." Id. at 271.  As a result, even if the language is ambiguous, construction of the CBA according to the dictates of M & G Polymers, compels the conclusion that Section 7 does not survive the

expiration of the CBA, given the lack of express language to the contrary and the expiration contained in the durational clause.

For this reason, Penn Jersey's alternative claim that the language is ambiguous also fails.  In addition to a lack of evidence in the record suggesting such an extension was agreed upon, the Supreme Court directs that "courts should not construe ambiguous writings to create lifetime promises." M & G Polymers, 135 S. Ct. at 936-37 (citing 3 A. Corbin, Corbin on Contracts § 553, p. 216 (1960) (explaining that contracts that are silent as to their duration will ordinarily be treated not as "operative in perpetuity" but as "operative for a reasonable time" (internal quotation marks omitted)).

As a result, there is no genuine issue as to any material fact based on the language of the CBA. Pursuant to the CBA's durational clause, Local 676 did not have any contractual obligations to Penn Jersey and, by reference the Plan, when Agate withdrew from the Plan in 2009.

## IV.    <u>Conclusion</u>

For the reasons set forth above, and those made on the record during the hearing on February 11, 2016, Plaintiff William J. Einhorn's Motion for Summary Judgment is granted in part as to Counts I-VIII and denied in part as to Count IX.  The Motion for Partial Summary Judgment as to Count IX of Defendants Penn Jersey Building Materials, Inc., Agate Construction Co., Inc., Tuckahoe Sand and Gravel Co., Inc., Eastern Transit Mix, Johnston Enterprises, Inc., Dial Block, Inc., Johnston Realty, ELJ Realty, and James E. Johnston, Jr. is denied. With respect to the Third Party Complaint,

Penn Jersey Building Materials, Inc.'s Motion for Partial Summary Judgment as to

Counts I and II is denied and Local No. 676's Motion for Summary Judgment is granted.

An appropriate order shall issue.

Dated: March 31, 2016

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE